UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20160-ALTMAN/Sanchez

**LYNN MAYER**,

*Plaintiff*,

*v.*

**CARNIVAL CORPORATION**,

*Defendant.*

_____/

## ORDER ON MOTION TO DISMISS

The Defendant, Carnival Corporation, has moved to dismiss the Plaintiff's Second Amended Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion to Dismiss") [ECF No. 24]. For the reasons we outline below, the Motion to Dismiss is **DENIED**.[1]

### THE FACTS[2]

Our Plaintiff, Lynn Mayer, has sued the Defendant, Carnival, asserting three negligence claims: Negligent Failure to Maintain (Count I); Negligent Failure to Warn (Count II); and Negligent Failure to Train (Count III). *See generally* Second Amended Complaint (the "SAC") [ECF No. 23]. Mayer alleges that, on August 5, 2023, while she was a passenger on the cruise ship *Carnival Venezia*, the Defendant "served Plaintiff a frozen drink which contained shards of glass blended into the drink." *Id.* ¶¶ 6–9. According to the Plaintiff, she "unknowingly ingested the drink containing glass served by Defendant" and, "[a]s a result . . . sustained severe bodily injury[,] . . . . pain and suffering, aggravation

---

[1] The Motion to Dismiss is ripe for resolution. *See* Plaintiff's Response to Defendant's Motion to Dismiss (the "Response") [ECF No. 25]; Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss (the "Reply") [ECF No. 26].

[2] We take the following facts from the Plaintiff's Second Amended Complaint and accept them as true for purposes of this Order.

of a pre-existing condition, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of wages." *Id.* ¶¶ 10–11, 19. Mayer thus "demands judgment against Defendant, Carnival Corporation, for compensatory damages, punitive damages, court costs, and such other and additional relief as this Court may deem appropriate." *Id.* ¶ 20.

Carnival now moves to dismiss the SAC under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion to Dismiss at 1. We'll address each of the Defendant's arguments in turn.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). "The motion is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief

2

that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. 544, 570 (2007)).

"Claims arising from torts committed aboard ships on navigable waters are governed by general maritime law." *Breaux v. NCL (Bahamas) Ltd.*, 2022 WL 2304254, at *6 (S.D. Fla. June 24, 2022) (Altman, J.); *see also Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) ("[W]e note that the substantive law applicable to this action, which involves an alleged tort committed aboard a ship sailing in navigable waters, is the general maritime law[.]").

To plead negligence in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322. "Actual notice exists when the defendant knows of the risk-creating condition," *Gorczyca v. MSC Cruises, S.A.*, 715 F. App'x 919, 921 (11th Cir. 2017), while constructive notice exists when the defendant "*should have known* of the dangerous condition," *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1204 (S.D. Fla. 2020) (Moore, C.J.).

**ANALYSIS**

I.  **Actual or Constructive Notice**

In its first argument for dismissal—which it applies to all three counts—Carnival claims that the "Plaintiff fails to allege with sufficient facts that Defendant had actual or constructive notice of the 'dangerous condition.' Rather Plaintiff merely relies on the conclusory assertion that Carnival knew or should have known of the dangerous condition[,] . . . [but] Plaintiff does not present nor bring to light any kind of factual evidence that would support these allegations that would establish notice for Carnival." Motion to Dismiss at 7. The Defendant thus asks us to dismiss the SAC for failure to "impute[ ] notice on Carnival." *Id.* at 8. We disagree. At this early stage of the case, Mayer doesn't need to provide us with "evidence" that her allegations are true. Instead, she must advance enough factual allegations to allow us to draw the reasonable inference that Carnival had actual or constructive notice of the dangerous condition—and we think she's met that lower standard here.

A shipowner owes its passengers the duty to exercise "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition[.]" *Keefe*, 867 F.2d at 1322. "Liability thus depends upon whether the ship operator either knew, or else should have known, about the allegedly dangerous condition that the plaintiff claims caused her injury." *Sutton v. Royal Caribbean Cruises Ltd.*, 774 F. App'x 508, 511 (11th Cir. 2019) (per curiam); *see, e.g.*, *Harding v. NCL (Bahamas) Ltd.*, 90 F. Supp. 3d 1305, 1307–8 (S.D. Fla. 2015) (granting motion to dismiss because the plaintiff did "not allege a single fact from which it [could] be inferred that [the defendant] knew or should have known of the dangerous conditions contributing to her fall").

Mayer has plausibly alleged that Carnival had actual or constructive notice of the dangerous condition that caused her alleged injury—*i.e.*, that Carnival knew or should have known that glass could break "near the areas where the ice for the bar is kept and that there [was] a significant chance

4

that a piece of broken glass would end up in the ice." Response at 4. Specifically, Mayer alleges as follows:

> Defendant breached its duties to Plaintiff by failing to exercise reasonable care in maintaining the blender and bar area so as to keep it free of broken glass and allowing for the broken glass to get blended into the Plaintiff's drink.
>
> Defendant had actual knowledge of the dangerous condition; or if Defendant lacked such actual knowledge, this dangerous condition existed for such a length of time that, in the exercise of ordinary care, Defendant, Carnival Corporation, should have known of the condition[;] or in the alternative, the condition occurred with regularity and was therefore foreseeable.
>
> Moreover, Defendant knew or should have known that there was potential for a glass to break near the areas where the ice for the bar is kept and that there is a significant chance that a piece of broken glass would end up in the ice . . . . Defendant had exclusive custody and control of the area where Plaintiff was injured, including the ice bin and blender.

SAC ¶¶ 14–16, 18. Mayer adds that "broken glass in or around the bar area is a known danger, and something an experienced bartender should have had knowledge of[.]" *Id.* ¶ 25. Especially since the Plaintiff hasn't had the opportunity to take discovery, we think these allegations are *plainly* sufficient to plead actual or constructive notice.

And courts in our District routinely find similar allegations sufficient at the motion-to-dismiss stage. *See Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1147 (S.D. Fla. 2016) (Lenard, J.) ("'[The plaintiff alleges that Celebrity Cruises] knew or should have known the [excursion operator's] practice of loading and unloading special needs passengers was unsafe . . . . Under *Twombly/Iqbal*'s liberal pleading standard, the [p]laintiff is not required to specifically detail which policies and procedures were unsafe and how they created danger. She need only allege that there was a danger that Celebrity should or could have known about. Because [p]laintiff has satisfied her pleading requirements, her claim for negligence survives Celebrity's 12(b)(6) motion."). In *Twyman v. Carnival Corp.*, for example, a case against this same defendant, Chief Judge Altonaga wrote:

> Carnival overlooks Plaintiffs' factual allegations supporting an inference Carnival knew or should have known of the risk-creating condition associated with the specific

5

> vendor. Plaintiffs allege Carnival owns, operates, manages, maintains, and controls the Cruise Center . . . where vendors, including Wet Money Enterprise, offer jet ski rental services to Carnival passengers[.] As the operator and owner of the Cruise Center, Carnival monitors and inspects the property, during which Carnival discovered or should have discovered the dangers Wet Money Enterprise presented . . . . These additional factual allegations, connecting the inspections and operation of the Cruise Center to the dangerous condition, adequately "nudge[ ] [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570[.]

410 F. Supp. 3d 1311, 1321–22 (S.D. Fla. 2019) (Altonaga, J.). Even more so than in these other cases, where the plaintiffs alleged that a cruise-ship operator had control over *a third party's* negligence, *our* Plaintiff alleges (1) that, "[a]t all times material, [Carnival] owned, operated, managed, maintained and/or controlled the cruise vessel," *see* SAC ¶ 6; (2) that Carnival had "exclusive custody and control of the area where Plaintiff was injured, including the ice bin and blender," *id.* ¶ 18; and (3) that Carnival *itself* served Mayer the frozen drink, which contained shards of glass blended into the drink, *see id.* ¶ 9. These claims likewise nudge Mayer's allegations "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Because *Twombly* and *Iqbal* require only "enough fact to raise a reasonable expectation that discovery *will reveal* evidence"[3] of the defendant's liability, *see Chaparro*, 693 F.3d at 1337 (emphasis added), we find that Mayer's allegations are sufficient to support an inference that Carnival had notice of the dangerous condition in the bar area of the *Carnival Venezia*. We therefore reject Carnival's contention that the Plaintiff has "fail[ed] to plead sufficient facts to establish actual or constructive notice." Motion to Dismiss at 4.

---

[3] As we've said, Carnival argues that the Plaintiff fails to "bring to light . . . factual *evidence* that would support [her] allegations that would establish notice for Carnival." Motion to Dismiss at 7 (emphasis added). But that's not the standard we use on a motion to dismiss. "[A]t the pleading phase of the case, the [p]laintiff is not required to set forth evidence of injury or evidence in support of [her] claims." *Intel Corp. v. Econintel Treasury Sys., Inc.*, 2008 WL 11399616, at *1 (S.D. Fla. Feb. 13, 2008) (Dimitrouleas, J.). Rather, "[i]n deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true," taking them in the light most favorable to the plaintiff. *Dusek*, 832 F.3d at 1246.

### II.     Negligent Failure to Train

Carnival also argues that the Plaintiff "fails to properly plead negligent training" because she "does not identify any actual policies or training procedures to establish that Carnival failed to properly train its crew members." Motion to Dismiss at 10. On this point, we agree.

Negligent failure to train is a "recognized dut[y] under federal maritime law." *Diaz v. Carnival Corp.*, 555 F. Supp. 3d 1302, 1310 (S.D. Fla. 2021) (Torres, Mag. J.). "Negligent training occurs when an employer was negligent in the implementation or operation of [a] training program and this negligence caused a plaintiff's injury." *Quashen v. Carnival Corp.*, 576 F. Supp. 3d 1275, 1304 (S.D. Fla. 2021) (Moore, J.) (cleaned up). For a plaintiff "to state a claim for negligent training, he must show that [the defendant] was negligent in the implementation or operation of [a] training program." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). "[G]eneral maritime law does not recognize a claim of negligence that is premised upon a company's general policies and operations." *Quashen*, 576 F. Supp. 3d at 1297.

Mayer alleges that Carnival "owed a duty to Plaintiff to properly train [its] staff on safety procedures, bartending procedures and cleaning procedures, including preparing frozen drinks free of foreign, dangerous objects like glass." SAC ¶ 29. Mayer also claims that Carnival "breached its duty to Plaintiff by failing to train [its] bartending crew members to periodically and properly check the bar area, ice bin and blender so as to clean and remove any broken glass; as well as to adequately conduct inspections to ensure that a dangerous, hazardous and unsafe condition such as a broken glass did not get added to frozen drinks." *Id.* ¶ 30. And she alleges that, "[a]s a direct and proximate result of the foregoing negligence," she "suffered bodily injury and resulting pain and suffering[.]" *Id.* ¶ 33.

But Mayer never actually alleges that Carnival *has* a training program for its bartenders that goes beyond the company's general policies and operations. *See generally id.* ¶¶ 28–33. Remember, to state a claim for negligent training, a plaintiff "must allege [that the defendant] was negligent in the

7

*implementation or operation of [a] training program* and [that] the negligence caused his injury." *Anders v. Carnival Corp.*, 2023 WL 4252426, at *4 (S.D. Fla. June 29, 2023) (Altonaga, C.J.) (emphasis added). On this standard, courts in our District tend to dismiss claims for negligent training where a plaintiff hasn't alleged "that certain training programs exist." *Walsh v. Carnival Corp.*, 2020 WL 10936272, at *5 (S.D. Fla. July 7, 2020) (Ungaro, J.); *see also Watts v. City of Hollywood, Fla.*, 146 F. Supp. 3d 1254, 1273 (S.D. Fla. 2015) (Altonaga, J.) (dismissing a failure-to-train claim in a non-maritime case where the complaint did "not contain any allegations describing a particular training program, let alone allegations highlighting why such a training program is defective and how the defect is a widespread problem"). We recognize that, in *Spotts v. Carnival Corp.*, another maritime case against this same defendant, we denied a motion to dismiss a negligent-training claim. 2024 WL 111921, at *5 (S.D. Fla. 2024) (Altman, J.). In that case, however, the plaintiff "made specific factual allegations about Carnival's 'trainings and procedures,'" adding that "CARNIVAL's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured." *Ibid.* This case is meaningfully different because Mayer never alleges that Carnival *has* a training program for its bartenders—much less that the program trains bartenders on the dangers of making drinks around broken glass.

Taking the allegations in the light most favorable to the Plaintiff, we cannot say that Mayer has stated a claim for negligent training based on the facts we have before us. We therefore **GRANT** the Motion to Dismiss Count III (Negligent Failure to Train).

### III. Punitive Damages

Carnival next contends that the Plaintiff's SAC "fails to properly plead sufficient facts to bring a claim of punitive damages." Motion to Dismiss at 8. "In this instance," Carnival avers, "Plaintiff not only neglects to provide adequate *facts* to demonstrate that Carnival's conduct was intentional, but also entirely omits any *assertion* that Carnival's conduct was intentional." *Id.* at 9–10 (emphases added).

8

Since Mayer relies "solely on legal conclusions," Carnival adds, her claim for punitive damages "falls short of meeting the plausibility standards" set out in *Twombly* and *Iqbal*. *See id.* at 10.

In 2009, the U.S. Supreme Court held that "the common-law tradition of punitive damages extends to maritime claims." *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 414 (2009). Since then, however, the Eleventh Circuit has "made clear" that "punitive damages are precluded in maritime personal injury claims except in exceptional circumstances[.]" *Incardone v. Royal Caribbean Cruises, Ltd.*, 2020 WL 2950684, at *6 (S.D. Fla. Jan. 18, 2020) (Martinez, J.); *see also Petersen v. NCL (Bahamas) Ltd.*, 748 F. App'x 246, 251–52 (11th Cir. 2018) (holding that "[n]othing in [*Atlantic Sounding*] undermines our [prior] holding in *In re Amtrak* . . . . that punitive or loss of consortium damages may be available under federal maritime law [only] 'in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman'" (quoting *In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala. on Sept. 22, 1993*, 121 F.3d 1421, 1429 (11th Cir. 1997)).

Courts in our District have applied two different standards to determine whether a plaintiff in a maritime case can recover punitive damages. Some judges, referencing *Atlantic Sounding*, have held that "a plaintiff may recover punitive damages under general maritime law, consistent with the common-law rule, where the plaintiff's injury was due to the defendant's wanton, willful, or outrageous conduct." *Lobegeiger v. Celebrity Cruises, Inc.*, 2011 WL 3703329, at *7 (S.D. Fla. Aug. 23, 2011) (Altonaga, J.) (cleaned up); *see also Atl. Sounding*, 557 U.S. at 424 ("Because punitive damages have long been an accepted remedy under general maritime law . . . such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law."). Other judges, though, have used less permissive language, hearkening back to *In re Amtrak*. *See, e.g.*, *Medeiros v. NCL (Bahamas) LTD.*, 2020 WL 1308728, at *8 (S.D. Fla. Mar. 5, 2020) (Louis, Mag. J.), *report and recommendation adopted*, 2020 WL 1307044 (S.D. Fla. Mar. 19, 2020) (Moreno, J.) ("In admiralty law a plaintiff must demonstrate intentional misconduct in order to recover

9

punitive damages."); *Ginley v. Dutra Dredging Co.*, 2020 WL 13379369, at *2–3 (S.D. Fla. June 30, 2020) (Martinez, J.) ("In 1997, the Eleventh Circuit held that punitive damages were not available in personal injury actions brought under general maritime law 'except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman, intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman and in those very rare situations of intentional wrongdoing.' . . . *Atlantic Sounding* did not actually overrule *Amtrak*, and because *Atlantic Sounding* concerned a narrow maritime claim—willful and wanton disregard of maintenance and cure obligation by an employer—it may be reconciled with *Amtrak* . . . . [Thus] Ginley's complaint must meet the *Amtrak* standard to claim punitive damages." (quoting *In re Amtrak*, 121 F.3d at 1429)).

Fortunately, we needn't weigh in on this split here since the Plaintiff hasn't come close to satisfying either standard. She, in fact, hasn't advanced a single factual allegation supporting her contention that the bartender (or any other Carnival employee) acted intentionally *or* wantonly. *See* SAC ¶ 8–9 ("While on the cruise, on or about August 5, 2023, Plaintiff ordered a frozen drink from Defendant. Defendant thereafter served Plaintiff a frozen drink which contained shards of glass blended into the drink."). True, Mayer asserts that the "Defendant acted with a willful, wanton disregard for the safety of its passengers," SAC ¶ 20, but she proffers *no* facts that would raise her wantonness claim "above the speculative level," *Twombly*, 550 U.S. at 555. And Mayer certainly hasn't shown that this was an "exceptional circumstance," *Petersen*, 748 F. App'x at 252, or one of those "very rare situations of intentional wrongdoing," *Ginley*, 2020 WL 13379369, at *2 (cleaned up). We therefore **GRANT** the Motion to Dismiss the Plaintiff's request for punitive damages.

### IV. Shotgun Pleading

Finally, Carnival argues that the "Plaintiff's Second Amended Complaint should be dismissed as a shotgun pleading[.]" Motion to Dismiss at 12. Carnival's theory—advanced despite the fact that Mayer clearly lays out three separate negligence causes of action—is that the complaint should be

10

dismissed because the "Plaintiff asserts in Count II—the failure to warn claim—that 'Defendant owed Plaintiff the duty to warn . . . and to remove all foreign substances and objects from the subject drink which could injure Plaintiff.'" *Id.* at 13 (quoting SAC ¶ 22). "The claim," Carnival adds, "that Defendant had a duty to remove foreign substances is not at all associated with the specific failure to warn cause of action." *Ibid.* According to Carnival, the SAC is thus a "confusing comingled shotgun pleading," *ibid.*, justifying dismissal of the entire complaint, *id.* at 11. We disagree.

To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Federal Rules also require plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). As the Eleventh Circuit has explained, a complaint is an impermissible "shotgun" pleading if it:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). Here, Carnival contends that the Complaint "should be dismissed as a shotgun pleading under the second type of shotgun pleading," which "exists when the plaintiff pleads a complaint with 'conclusory, vague, and immaterial facts not obviously' associated with a specific cause of action." Motion to Dismiss at 12 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)).

We're not persuaded by Carnival's theory, which would require us to dismiss an entire complaint because of one inartful sentence, which reads as follows: "At all times material, Defendant owed Plaintiff the duty to warn of any dangerous conditions such [as] a piece of glass in Plaintiff's subject drink and to remove all foreign substances and objects from the subject drink which could injure Plaintiff." SAC ¶ 22. For one thing, this sentence appears to be describing the Defendant's

11

*failure to warn*, so we don't think the sentence is in any way "comingled." Motion to Dismiss at 13. For another, a complaint is only an impermissible "shotgun" pleading under the second *Embree* category if it is "*replete* with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Embree*, 779 F. App'x at 662 (emphasis added). Here, Carnival only identifies half of one sentence that (it says) includes conclusory, vague, and immaterial facts. Even under Carnival's theory, in other words, the SAC isn't "replete with conclusory, vague, and immaterial facts not obviously connected to any cause of action, . . . such that it falls under the second category of shotgun pleading." *O.E. Wheel Distribs., LLC v. Mobile Hi-Tech Wheels, LLC*, 2022 WL 2918028, at *4 (M.D. Fla. July 25, 2022) (Honeywell, J.) (cleaned up). [4]

At bottom, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. In our case, there's no indication that Carnival lacks notice of the claims against it. On the contrary, Carnival acknowledges that Mayer brings three separate negligence claims, *see* Motion to Dismiss at 4, and it advances distinct arguments for dismissal as to some of those claims, *see id.* at 10 (arguing that the Plaintiff fails to state a claim for negligent training). Because Mayer's SAC doesn't "lack[ ] the minimum clarity, brevity, or coherence required by Rules 8 and 10 of the Federal Rules of Civil Procedure," *Lozano v. Prummell*, 2022 WL 4384176, at *2 (M.D. Fla. Sept. 22, 2022) (Steele, J.), it's not a shotgun pleading. We therefore **DENY** the Motion to Dismiss the SAC as an impermissible shotgun pleading.

---

[4] Carnival also says that Mayer "*continuously* pleads her complaint with conclusory, vague, and immaterial facts not obviously associated with a specific cause of action," Motion to Dismiss at 13 (cleaned up & emphasis added), but it doesn't identify any other places where this is true, leaving us to guess about which parts of the SAC Carnival considers vague. We won't consider arguments Carnival has chosen not to develop. In any event, based on our own review of the SAC, we don't think the Plaintiff *continuously* alleges conclusory, vague, or immaterial facts.

12

\*     \*     \*

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion to Dismiss the Second Amended Complaint [ECF No. 24] on the ground that the Plaintiff failed to plead sufficient facts to establish actual or constructive notice is **DENIED**.

2. The Defendant's Motion to Dismiss Count III (Negligent Failure to Train) is **GRANTED**. Count III is **DISMISSED** without prejudice.

3. The Defendant's Motion to Dismiss the Plaintiff's request for punitive damages is **GRANTED**. The Plaintiff's punitive-damages claim is **DISMISSED** without prejudice.

4. By **May 7, 2024**, the Plaintiff may file an amended complaint that remedies the deficiencies we've identified in Count III and in her request for punitive damages.

5. The Motion to Dismiss the Complaint as a shotgun pleading is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on April 23, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

13